295 So.2d 275 (1974)
CRECHALE & POLLES, INC.
v.
John D. SMITH, Jr. and Mrs. Gloria Smith.
No. 47544.
Supreme Court of Mississippi.
May 27, 1974.
Burgin, Gholson, Hicks & Nichols, Columbus, for appellant.
W.E. Gore, Jr., W.F. Selph, Jr., Michael R. Medley, Jackson, for appellees.
RODGERS, Presiding Justice.
This action originated in the Chancery Court of the First Judicial District of Hinds County, Mississippi, pursuant to a bill for specific performance of a lease contract filed by Crechale and Polles, Inc., appellant herein. The court awarded the complainants one thousand seven hundred and fifty dollars ($1,750.00) in back rent payment, and seven hundred sixty dollars ($760.00) for damages to the leasehold premises, as well as costs incurred in the proceeding. From this judgment appellant files this appeal and appellees cross-appeal.
The testimony shows that on February 5, 1964, the appellant, Crechale and Polles, Inc., a Mississippi corporation, entered into a lease agreement with appellees, John D. Smith, Jr. and Mrs. Gloria Smith, with appellant as lessor and appellees as lessees. The lease was for a term of five (5) years commencing February 7, 1964, and expiring February 6, 1969, with rental in the amount of one thousand two hundred fifty dollars ($1,250.00) per month.
Smith was informed near the end of his lease that the new building which he planned to occupy would not be complete until a month or two after his present lease expired. With this in mind, he arranged a meeting with his landlord, Crechale, in late December, 1968, or early January, *276 1969, for the purpose of negotiating an extension of the lease on a month-to-month basis. The outcome of this meeting is one of the focal points of this appeal and the parties' stories sharply conflict. Crechale maintains that he told Smith that since he was trying to sell the property, he did not want to get involved in any month-to-month rental. Smith asserts that Crechale informed him that he was trying to sell the building, but that he could stay in it until it was sold or Smith's new building was ready. Smith's attorney drafted a thirty (30) day extension, but Crechale refused to sign it, saying, "Oh, go ahead. It's all right." Crechale denies that he was ever given the document to sign.
The following is a chronological explanation of the events which led to the subsequent litigation:
February 4, 1969  Smith sent a letter to Crechale confirming their oral agreement to extend the lease on a monthly basis.
February 6, 1969  Crechale wrote Smith denying the existence of any oral agreement concerning extension of the lease and requesting that Smith quit and vacate the premises upon expiration of the term at midnight, February 6, 1969. The letter also advised Smith that he was subject to payment of double rent for any holdover.
March 3, 1969  Smith paid rent for the period of February to March. The check was accepted and cashed by Crechale.
April 6, 1969  Smith paid rent for the period of March to April, but the check was not accepted by Chechale, because it was for "final payment".
April 7, 1969  Smith sent a telegram to Crechale stating that he was tendering the premises for purposes of lessor's inventory. The telegram confirmed a telephone conversation earlier that day in which Crechale refused to inventory the building.
April 19, 1969  Approximately three and one-half (3 1/2) months after the expiration of the lease, Crechale's attorney wrote Smith stating that since the lessee had held over beyond the normal term, the lessor was treating this as a renewal of the lease for a new term expiring February 6, 1974.
April 24, 1969  Smith again tendered the check for the final month's occupancy and it was rejected by Crechale.
April 29, 1969  Crechale's attorney wrote Smith again stating the lessor's intention to consider the lessees' holdover as a renewal of the terms of the lease.
There was no further communication between the parties until a letter dated May 15, 1970, from Crechale to Smith requesting that Smith pay the past-due rent or vacate the premises.
May 27, 1970  Smith's attorney tendered the keys to the premises to Crechale.
Subsequently, this lawsuit was filed by Crechale to recover back rent and damages beyond ordinary wear and tear to the leasehold premises. From the chancellor's decision, appellant files the following assignments of error:
(1) The lower court erred in holding that the appellees were not liable as holdover tenants for an additional term of one (1) year.
(2) The lower court's award of damages to the appellant was so inadequate in its amount as to be contrary to the overwhelming evidence.
The cross-appellants, John D. Smith, Jr. and Mrs. Gloria Smith, assign the following as error:
(1) That the chancellor erred in overruling cross-appellants' general demurrer to the original bill for specific performance.
(2) That the lower court erred in assessing damages against the cross-appellants.
The appellant, Crechale and Polles, Inc., contends that the appellees became holdover tenants for a new term under the contract at the election of the landlord appellant, and that appellees owe appellant the rent due each month up to the filing of suit, less the rent paid; and, in addition thereto, it is entitled to specific performance of the holdover contract. This argument *277 is based upon the general rule expressed in 3 Thompson on Real Property § 1024, at 65-66 (1959), wherein it is said:
"As a general rule, a tenancy from year to year is created by the tenant's holding over after the expiration of a term for years and the continued payment of the yearly rent reserved. * * * By remaining in possession of leased premises after the expiration of his lease, a tenant gives the landlord the option of treating him as a trespasser or as a tenant for another year, ..."
In support of this rule the appellant cites Tonkel, et al. v. Riteman, 163 Miss. 216, 141 So. 344 (1932) wherein it is said:
"It is firmly established that where, without a new contract, a tenant continues to occupy the property which he has held under an annual lease, he becomes liable as tenant for another year at the same rate and under the same terms. Love v. Law, 57 Miss. 596; Usher v. Moss, 50 Miss. 208. It is the duty of a tenant when his period of tenancy has expired to surrender the premises to his landlord or else to have procured a new contract, and, if he fails to do either, the landlord may treat him as a trespasser or as a tenant under the previous terms, according to the option of the landlord." 163 Miss. at 219, 141 So. at 344.
An examination of the testimony in this case has convinced us that the appellant is not entitled to specific performance so as to require the appellees to pay rent for a new term of the rental contract as a holdover tenant for the following reasons.
After receiving a letter from one of the appellees in which appellee Smith confirmed an alleged agreement to extend the lease on a month-to-month basis, Crechale immediately wrote Smith and denied that there was such an agreement, and demanded that Smith quit and vacate the premises at the end of the lease.
In addition to the rule expressed in 3 Thompson on Real Property § 1024, above cited, another rule is tersely expressed in American Law of Property § 3.33, at 237 (1952) as follows: "When a tenant continues in possession after the termination of his lease, the landlord has an election either to evict him, treat him as a trespasser it is said, or to hold him as a tenant."
The letter from the appellant dated February 6, 1969, was an effective election on the part of appellant to terminate the lease and to treat the appellees as trespassers.
After having elected not to accept the appellees as tenants, the appellant could not at a later date, after failing to pursue his remedy to evict the tenants, change the election so as to hold the appellees as tenants for a new term.
It is pointed out by the text writer in 49 Am.Jur.2d under the title of Landlord and Tenant that:
"After the landlord has once exercised his election not to hold the tenant for another term, his right to hold him is lost. On the other hand, if he has signified his election to hold the tenant for another term he cannot thereafter rescind such election and treat the tenant as a trespasser, since his election when once exercised is binding upon the landlord as well as the tenant." (Emphasis added) 49 Am.Jur.2d Landlord and Tenant § 1116, at 1070 (1970).
Although the landlord, appellant, expressly refused to extend the lease on a month-to-month basis, nevertheless, the appellant accepted and cashed the rent check for the month of February. The normal effect of such action by the landlord is tantamount to extension of the lease for the period of time for which the check was accepted, unless, of course, the landlord had elected to treat the tenant as a holdover tenant.
The following excerpt from Annot., 45 A.L.R.2d 827, 831 (1956) points out this rule: "It is the rule that, absent evidence to show a contrary intent on the part of *278 the landlord, a landlord who accepts rent from his holding-over tenant will be held to have consented to a renewal or extension of the leasing."
Although there is authority to the contrary [see Annot., 45 A.L.R.2d at 842] the overwhelming weight of authority has adopted the rule above expressed.
On April 6, 1969, the tenants mailed a check for rent for the month of March accompanied by a letter stating that the enclosed check represented the final payment of rent. The next day the tenants tendered the lease premises to the landlord and requested an inventory of certain personal property described in the lease. The landlord refused to accept the tender and rejected the check as a final payment. On April 19, 1969 [three and one-half (3 1/2) months after the expiration of the lease] the landlord attempted to change its position. It then notified the tenants that it had elected to treat them as holdover tenants so as to extend the lease for another term.
We are of the opinion that once a landlord elects to treat a tenant as a trespasser and refuses to extend the lease on a month-to-month basis, but fails to pursue his remedy of ejecting the tenant, and accepts monthly checks for rent due, he in effect agrees to an extension of the lease on a month-to-month basis. See Lally v. The New Voice, 128 Ill. App. 455 (1906); Stillo v. Pellettieri, 173 Ill. App. 104 (1912).
There is authority to the contrary, but we believe this rule to be based on the best reasoned authority.
The appellant contends that the decree of the trial court awarded inadequate damages to the appellant. The appellant fails, however, to point out any fact which would indicate to this Court wherein the decree of the trial court is manifestly wrong. We think that this issue of damages was a question of fact for the chancellor, and from an examination of the record we cannot say that the chancellor was manifestly wrong.
In Dozier v. State, 247 Miss. 850, 157 So.2d 798 (1963), this Court discussed the situation where the attorney failed to support his assertions on appeal. The Court stated:
"Judge Griffith applicably summarized the assistance of briefs to the Supreme Court in Johnson v. State, supra, 154 Miss. 512, 122 So. 529, which says:
`As far as possible, the reasons assigned should be supported by the citation of authorities or they will not be considered, unless it is clearly apparent that they are well taken.' (Citations omitted) `It is the duty of counsel to make more than an assertion; they should state reasons for their propositions, and cite authorities in their support. * * * It is seldom sufficient to state naked legal propositions, for propositions are by no means always self-evident,' Elliot, App.Proc. pp. 375, 376; and when not self-evident the party who advances them and cites no authority to support them may justly be said to have failed to maintain them."
247 Miss. at 852, 853, 157 So.2d at 799.
The cross-appellants, the Smiths, contend that the trial court erred in overruling their demurrer upon the ground that the landlord had an adequate remedy at law. They cite Roberts v. Spence, 209 So.2d 623, 626 (Miss. 1968) wherein this Court said: [O]rdinarily a court of equity will not attempt to enforce a contract by specific performance where the parties have an adequate remedy at law to recover damages growing out of the failure of a contracting party to carry out the terms of the contract."
The landlord does have a remedy at law to evict a tenant [Mississippi Code Annotated § 89-7-27 (1972)]; nevertheless, a landlord may also proceed in chancery to enforce specific performance of a renewed contract, and the mere fact that the chancellor held that specific performance would not be allowed does not retroactively *279 deprive the chancery court of jurisdiction. This Court said in Roberts v. Spence, supra: "The application for specific performance is addressed to the sound discretion of the chancery court." [209 So.2d at 625]. The chancellor was correct in overruling the demurrer.
We cannot agree with the cross-appellants' contention that the chancellor was manifestly wrong in awarding the amount of damages for the items set out in the decree of the chancery court. We have carefully examined each item in the light of the briefs, and we find no reversible error in the ruling of the trial court.
We hold, therefore, that the decree of the trial court should be and is hereby affirmed.
Affirmed.
INZER, ROBERTSON, WALKER and BROOM, JJ., concur.